IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS W. ZACH,

                Plaintiff,

  v.                                            OPINION & ORDER

RANDY LEWIS, TROY HERMANS,                     13-cv-849-jdp
WAYNE OLSON, JOHN DOE and JANE DOE,

                Defendants.

---

Plaintiff Thomas Zach, a former prisoner at the Thompson Correctional Center, located in Deerfield, Wisconsin, is proceeding on a claim that defendants Troy Hermans and Randy Lewis violated his First Amendment rights by placing him in temporary lockup in retaliation for filing a grievance.[1] Defendants have filed a motion for summary judgment, acknowledging that Zach was placed in TLU but stating that he was placed there for a non-retaliatory reason: he was being investigated for a violation of prison rules. Defendants contend that the circumstantial evidence Zach provides is too scant to lead a reasonable jury to conclude that they acted with a retaliatory motive. I disagree with defendants' assessment and will deny their motion. This case will proceed to trial on the retaliation claims.

---

[1] Zach also brought claims that defendants Hermans and Lewis subjected him to cruel and unusual conditions of confinement in temporary lockup, and that John Doe prison officials violated his Eighth Amendment rights by ignoring his requests for medical treatment while he was in temporary lockup, but the parties stipulated to dismissal of those claims. Dkt. 41. Also, the court added current Thompson Correctional Center Superintendent Wayne Olson to the caption solely for the purpose of identifying the Doe defendants. Olson and the Doe defendants will be dismissed from the case.

UNDISPUTED FACTS

Unless otherwise indicated, the following facts are undisputed.

Plaintiff Thomas W. Zach worked as inmate driver at the Thompson Correctional Center (TCC) and was responsible for transporting other inmates to various civilian worksites in nearby counties. TCC staff did not accompany Zach during his rides. But TCC staff provided Zach with a phone equipped with a global positioning system to keep in contact with him as he drove other inmates to the worksites.

Zach had a reputation among TCC staff that he was a frequent grievance filer.[2] During his time at TCC, Zach filed numerous grievances against TCC staff. Many of these grievances complained of TCC Officer Brian Beahm's conduct. One such grievance arose out an incident that occurred on April 3, 2009. Zach and Beahm got into an argument about buckling the seatbelt in an institution vehicle. It was Zach's practice to buckle the seatbelt after leaving the vehicle to remind the next driver to wear it. Beahm did not approve of Zach's practice, and told him that if he did it again he would be written up. Feeling harassed, Zach requested a grievance form from defendant Sergeant Randy Lewis, who was responsible for distributing grievances forms to inmates who requested them.

---

[2] Defendants object to this statement on hearsay grounds. However, Zach is allowed to present evidence on summary judgment that might not be in the proper form, but that could be brought in the proper form at trial. Fed. R. Civ. P. 56(c)(2); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014), reh'g denied ("We note that the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form." (emphasis in original)). Zach could call TCC staff or other inmates to testify regarding what they knew about Zach's grievance history in an attempt to show that it was common knowledge that he was a frequent litigator, so I will not disregard Zach's proposed fact at summary judgment. But his fact adds very little to Zach's case. As discussed below, far more important is the timing between Zach's April 17 grievance and his almost immediate placement in TLU.

TCC uses the Department of Corrections' Inmate Complaint Review System (ICRS). Under the ICRS, an inmate who wishes to file a grievance related to his imprisonment must draft an offender complaint and submit it to the institution complaint examiner (ICE). In April 2009, Captain Robert Schenck was TCC's ICE.

Zach states that around noon on April 17, 2009, he approached Schenck while he was sitting at the officer's table with defendant Lewis in the TCC dining room, and hand delivered an offender complaint about the April 3, 2009 encounter with Beahm. Zach also says that Lewis saw this transaction, and that Schenck kept Zach's complaint. Defendants dispute this account. They dispute that Zach handed the grievance to Schenck, and state that Schenck did not accept offender complaints by hand delivery. Though the facts surrounding this dining-room encounter are disputed, I will accept Zach's allegations as true for the purposes of this summary judgment motion. There is no dispute that Schenck ultimately rejected Zach's grievance, stating that it was late, because he did not receive it until April 20, beyond the 14-day deadline. Zach did not appeal the rejection.

About six hours after Zach delivered the complaint to Schenck, defendant Warden Troy Hermans decided to place Zach in temporary lock up (TLU), and Lewis provided Zach with a Notice of TLU. One purpose of TLU is to separate the inmate from the general population pending an administrative investigation. DOC § 303.10(4). The notice stated that Zach was being placed in TLU because of a "[p]ending investigation for unauthorized forms of communication." The notice did not explain what the alleged unauthorized communications were.

Zach says that when he asked Lewis why he was being placed in TLU, Lewis responded, "You tell me, seems you pissed off someone." Lewis denies this. Lewis then

3

escorted Zach to the Oakhill Correctional Institution, where Zach remained in TLU for 12 days. (Because TCC does not have segregation cells for inmates placed in TLU, inmates placed in TLU are temporarily transferred to Oakhill.)

While in TLU, Zach was not allowed access to a law library or other legal resources needed to work on pending litigation matters in active briefing, and was confined to his segregation cell except for an hour of optional "recreation time" each day and to shower for 20 minutes every other day. The cell contained a thin, mold-infested mattress that caused Zach various health problems and made him unable to sleep.

Prison officials never questioned Zach about the alleged communications.[3] Upon his return to TCC, Zach contacted multiple staff members trying to find out why he was placed in TLU, but he was not given an answer.

Defendants do not have any contemporaneous documentation of the investigation other than the TLU notice. Defendant Hermans says, "If TCC staff suspected Zach of unauthorized forms of communication, there was likely a suspicion of Zach making unauthorized stops to either mail items, retrieve items, make phone calls, or meet someone," meaning that the suspicion must have been connected to Zach's job as driver. Dkt. 28, at 4, ¶ 11. But defendants admit that they do not remember the specifics of the investigation. Ultimately, Zach did not receive a conduct report for unauthorized communications.

---

[3] Defendants state that they "OBJECT to plaintiff's assertion that Zach was never confronted or asked by any TCC personnel about any unauthorized communication on the grounds that defendants have no personal knowledge." Dkt. 50 at 17, ¶ 43. This is the second time recently I have seen this type of objection by the state, and just like the first time, it is nonsensical. *See Aponte v. Suliene*, No. 14-cv-132-jdp, 2016 WL 4539223, at *3 n.2 (W.D. Wis. Aug. 30, 2016) ("plaintiff is allowed to put on evidence of events defendants did not witness."). I urge the state to stop objecting to proposed findings on the basis that *defendants* have no personal knowledge of the events.

ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Zach brings First Amendment retaliation claims against defendants Hermans and Lewis for placing him in TLU in response to his grievance about Beahm. More specifically, Zach contends that either Schenck or Lewis must have told Hermans about the grievance he hand delivered to Schenck at noon, and then Hermans placed him in TLU because of the grievance.

To prevail on his First Amendment retaliation claim, Zach must show that: (1) he engaged in activity protected by the First Amendment; (2) defendants took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decisions to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The first element is conceded by defendants. Dkt. 40, at 10.

Defendants argue that the 12-day TLU stint was not severe enough to deter a person of ordinary firmness from filing grievances in the future, as illustrated by the fact that Zach continued to regularly file grievances after this event. But the court applies an objective test, not a subjective test, to determine whether the alleged retaliatory actions would deter a person of "ordinary firmness" from engaging in the protected activity. *See, e.g., Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Segregation is not a walk in the park. Given the emerging research on the psychological effects of the isolation commonplace in segregation settings, I conclude that 12 days of segregation and reduced privileges could deter a person of ordinary firmness from filing grievances in the future.[4]

This leaves the causation element. Defendants contend that Zach has no evidence to show that Hermans was aware of the grievance or that Hermans's decision to place Zach in TLU was based on the grievance. To establish the necessary causal link, Zach must show that his grievance was "a substantial or motivating factor in [defendants'] decision" to place him in TLU. *Johnson v. Kingston*, 292 F. Supp. 2d 1146, 1153 (W.D. Wis. 2003). But he need not "come forward with direct evidence or the so-called smoking gun." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006) (internal quotation omitted). Rather, a plaintiff can demonstrate a defendant's retaliatory motive through "[c]ircumstantial proof, such as the timing of events or the disparate treatment of similar individuals." *Id*.

Zach's case rests on circumstantial evidence to prove both that defendant Hermans was aware of his grievance and that Hermans based his decision to place him in TLU on that grievance. Zach's case is aided by the fact that the investigation appeared to turn up nothing

---

[4] Zach does not show that defendants were aware of the substandard conditions of the Oakhill cell itself, particularly the thin, moldy mattress, so I am not considering those conditions in the "person of ordinary firmness" test.

on him. Zach was segregated in TLU for 12 days, presumably so that investigatory work could be done, but there is no documentation showing the progress or results of the investigation, and Zach said that he was never questioned by prison officials. The documentation is so lacking that defendants cannot even pinpoint what caused the investigation to be started: Hermans presumes that it was tied to Zach's job as a driver, but his guess is not evidence. One reasonable inference from the lack of information about the reason for or results of an investigation is that the investigation was a sham, and that Zach was placed in TLU for such a long time as punishment, rather than for legitimate investigatory reasons.

This inference is supported by defendant Lewis's statement when Zach asked him why he was escorting him to TLU. Lewis stated, "You tell me, seems you pissed off someone." The jury could take Lewis's statement as an admission that he knew that Hermans (the "someone making the TLU determination) made the decision to place Zach in TLU because Hermans was angry at him, not because he had broken a prison regulation.

But that does not necessarily mean that Hermans's decision to place Zach in TLU was retaliation for his grievance. Even assuming Hermans placed Zach in TLU on a false pretense, Zach still has the burden to show that part of Hermans's true reason for doing so was the grievance, as opposed to some other improper reason. And there is no direct proof that Hermans knew about the grievance.

That's where the suspicious timing fits in. Hermans's apparently unfounded TLU decision occurred only six hours after Zach handed his grievance to Schenck in front of Lewis. And the potential mechanism for Hermans becoming aware of the grievance is obvious: either Lewis or Schenck could have told him. Lewis's statement about Zach making

7

Hermans angry suggests that Lewis had reason to know about Hermans's thought process, which in turn suggests that it was Lewis who told Hermans.

As Zach admits, the case is circumstantial, but circumstantial evidence can be enough for a plaintiff to defeat summary judgment and to win at trial. Defendants argue that suspicious timing alone is not enough for Zach to defeat summary judgment, but his case is more than that: it is the timing, coupled with the potentially sham investigation, and Lewis's statement suggesting that Hermans meant to punish him. *See Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016) ("Although suspicious timing alone is rarely enough to create an inference of retaliatory motive, it can sometimes raise an inference of a causal connection, especially in combination with other evidence.").

Defendants could still be granted summary judgment if they could put forth evidence rebutting Zach's evidence that the grievance was a motivating factor in the decision to place him in TLU. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) ("[Plaintiff] having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's] reemployment even in the absence of the protected conduct."); *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (applying *Mt. Healthy* to prisoner retaliation claim.). But as discussed above, Hermans's stated rationale for placing Zach in TLU is supported only by the TLU notice. A reasonable jury would not have to believe defendants' stated rationale given the dearth of evidence supporting the contention that the investigation even took place.

Defendants argue that summary judgment should at least be granted to Lewis because he did not make the decision to place Zach in TLU. They say that "Lewis's only involvement

8

in Zach's placement in temporary lockup was escorting him to the lock up room and serving Zach with the notice of placement in temporary lockup form." Dkt. 48, at 8. If this were so, defendants would be correct that Zach's claim against Lewis should be dismissed: it is not retaliation for Lewis to simply follow Hermans's orders.

But a jury would not have to believe that Lewis's involvement was this limited. The timing of the TLU placement and Lewis's statement that "you pissed off someone" raises a reasonable inference that Lewis was aware of the retaliatory reasons for the TLU placement, and must have discussed the grievance with Hermans, which in turn raises the inference that Lewis told Hermans about Zach's grievance for the purpose of having Hermans punish Zach for it. Lewis remains free to argue at trial that he was not involved in the decision to place Zach in TLU, or even that he never saw Zach hand Schenck the grievance, but Zach has raised enough circumstantial evidence of Lewis's involvement to make a triable issue of it.

Finally, defendants contend that they are entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In deciding whether a right is "clearly established," courts ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The right must be established "at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013).

But prisoners' right to file grievances or conduct other First Amendment activity without the threat of prison officials retaliating against them is clearly established. *See, e.g.*, *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) ("[F]ederal courts have long recognized a

9

prisoner's right to seek administrative or judicial remedy of conditions of confinement.");

*Pearson v. Welborn*, 471 F.3d 732, 742 (7th Cir. 2006) ("[A] reasonable public official in Welborn's position would understand that retaliating against a prisoner on the basis of his complaints about prison conditions is unlawful."). Therefore, defendants are not entitled to qualified immunity.

ORDER

IT IS ORDERED that:

1. Defendants Wayne Olson and John or Jane Does are DISMISSED from the case.

2. Defendants Troy Hermans and Randy Lewis's motion for summary judgment, Dkt. 39, is DENIED.

Entered January 20, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge